UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CPG INTERNATIONAL, LLC,                               Case No. 1:15-cv-00451
    Plaintiff,                                       Litkovitz, M.J.

    vs.

A&R LOGISTICS, INC.,                                  **ORDER**
    Defendant.

This matter is before the Court upon plaintiff CPG International, LLC's motion for partial

summary judgment and supporting memorandum (Docs. 24, 25), defendant A&R Logistics,

Inc.'s opposing memorandum (Doc. 26), and plaintiff's reply memorandum (Doc. 27).

**I. Procedural history**

Plaintiff CPG International, LLC (CPG) initially filed the complaint in this action in state

court. (Doc. 2). Defendant A&R Logistics, Inc. (A&R) removed the action to this Court on July

8, 2015, based on the Court's diversity jurisdiction under 28 U.S.C. § 1332. (Doc. 1). Plaintiff,

a manufacturer of decking and railing products, alleges it is the successor in interest to a

company known as TimberTech. (Doc. 2). Plaintiff alleges that defendant A&R breached an

agreement between the parties and committed negligent misrepresentation by using a

contaminated trailer to transport two loads of high-density polyethylene (HDPE) pellets for use

in plaintiff's manufacturing processes. (*Id.*). Plaintiff CPG alleges the agreement was based on

the parties' history of conduct and is evidenced by three documents attached to the complaint:

A&R's Loading Report (*Id.*, Exh. 1); A&R's Freight Invoice (*Id.*; Exh. 2); and A&R's

Certificate of Compliance dated January 28, 2015 (*Id.*, Exh. 3). Plaintiff alleges that defendant's

purported breach and negligent misrepresentation led to contamination of its HDPE pellet

supply, created complications in its manufacturing processes, and resulted in extensive damages. (*Id.*).

Plaintiff CPG moves the Court for summary judgment on the issue of liability only. Plaintiff alleges there is no issue that defendant's trailer was the source of foreign material that contaminated its supply of HDPE pellets on January 28, 2015, and significantly impaired its manufacturing processes, resulting in the damages plaintiff alleges. (Docs. 24, 25, 27). Plaintiff has submitted an expert affidavit and report from a CPG employee on the cause of the contamination and other aspects of its claims. (Doc. 25, Exhs. 1, 7). In response, defendant A&R denies it is liable to plaintiff for the alleged damages. (Doc. 26). Defendant alleges it complied with industry standards and the terms of the parties' agreement when performing the services for which the parties contracted. Defendant has introduced the affidavit of an A&R employee concerning the industry standards for the particular type of cleaning the parties agreed upon as part of their contract. (*Id.*, Exh. 1). Further, defendant disputes that its trailer was the source of the claimed contamination of plaintiff's HDPE pellet supply. Plaintiff alleges in reply that defendant has introduced no evidence to refute CPG's evidence showing that A&R was responsible for contaminating plaintiff's product, and A&R cannot vary the terms of the parties' agreement, which are unambiguous, by introducing extrinsic evidence. (Doc. 27).

## II. Undisputed facts

Plaintiff has submitted a Statement of Proposed Undisputed Facts in support of its motion for partial summary judgment.[1] (Doc. 25-1). Defendant did not file a statement in response to plaintiff's proposed findings. Plaintiff argues in its reply brief that the Court should deem its entire statement of proposed undisputed facts to be admitted under "this Court's Standing Order

---

[1] Plaintiff asserts it submitted the statement "pursuant to S.D. Ohio Cin. R. V.2.a." (Doc. 25-1 at 1). However, there is no Local Rule with that number or a Local Rule that governs the filing of proposed undisputed facts in connection with a summary judgment motion.

Governing Civil Motions for Summary Judgment." (Doc. 27 at 1-2). Plaintiff alleges that the Standing Order states that "[a]ll material facts set forth in this statement [of Proposed Undisputed Facts] will be deemed admitted unless controverted by the statement required to be filed and served by the opposing party in accordance with (A)(2) of this Standing Order." (*Id*. at 1-2). The undersigned's Standing Order does not require a movant to file a statement of proposed undisputed facts with its summary judgment motion or require the non-movant to file a statement in response.[2] The Court therefore will not deem plaintiff's proposed factual findings to be admitted based on defendant's failure to file a statement in response.

     The Court has gleaned the following undisputed facts giving rise to this lawsuit from the parties' factual allegations and evidentiary submissions: Plaintiff CPG manufactures decking and railing products at its composite decking facility (formerly, TimberTech) located in Wilmington, Ohio (the "Facility"). Plaintiff uses HDPE pellets in the manufacture of its decking and railing products. It is critical that HDPE pellets used in CPG's manufacturing process remain uncontaminated, including by nylon pellets. (Doc. 25-1, Exh. 1, Bruce E. Stanhope, Ph.D. Aff., ¶¶ 5, 6). Nylon pellets, which have a higher melting point than HDPE pellets, will not melt in the CPG manufacturing process and as a result will cause voids and obstructions. (*Id*., ¶ 6).

     Starting in 2014, CPG hired defendant A&R to transport HDPE pellets within the Facility for use in CPG's manufacturing processes. (*Id*., ¶ 7). The parties did not have a written contract for transporting the pellets. A bill of lading was generated for the transport of each load.

     On January 28, 2015, CPG received a shipment of HDPE pellets at the Facility via railcar. On that same date, A&R transported two loads of the newly-arrived HDPE pellets

---

[2] It appears plaintiff relies on a provision of the undersigned's November 2012 Civil Procedures. Those procedures were revised effective May 2014 in the undersigned's Standing Order on Civil Procedures, which no longer require a party to submit a statement of proposed undisputed facts with a summary judgment motion. *See* http://www.ohsd.uscourts.gov/FPLitkovitz.

("Load # 1888375") from the railcar and blew them into a silo at the Facility. (*Id.*, ¶ 10; Doc. 25-1, Exh. 3). The Loading Report shows that A&R used its trailer #97012 (the "Trailer") to transport the pellets. (*Id.*, Exh. 3). Load # 1888375 never left the Facility.

A&R completed the Loading Report for Load #1888375, and plaintiff's representative signed the report. (*Id.*). According to the Report, the HDPE pellets were loaded from a railcar at the Facility and delivered to a silo at the Facility for unloading. (*Id.*). The Report does not include any representations about the condition of the trailer used for transporting the HDPE pellets. (*Id.*).

When defendant unloaded the HDPE pellets into the silo, it gave plaintiff a Certificate of Cleanliness (the "Certificate") dated January 28, 2015. (*Id.*, Exh. 6). The Certificate contains a checklist of cleaning techniques that were performed on the Trailer in connection with Load #1888375. (*Id.*). The Certificate states: "The [] checklist is not exclusive as additional cleaning techniques may be performed in order to ensure a clean, dry and odor-free trailer." (*Id.*). The Certificate also includes the following language:

> This inspection confirms – the tank interior, hoses, and transfer fittings used to load are Clean, Dry and Odor Free; with no pellets, fines, or residue. Load and unload lines were found to be clean and dry; end cap gaskets are in place and in good condition; and, bottom line clamps are in good condition, tight and secure.

TRAILER IS READY TO LOAD

(*Id.*).

Defendant sent CPG an invoice in the amount of $1,381.98 for transporting Load # 1888375. (*Id.*, Exh. 5). The invoice included a charge of $195.00 by A&R for cleaning the trailer. (*Id.*). The charge was made under A&R's Tariff ANR 100-U, effective August 1, 2014, which was posted on its website and in effect in January 2015. (Doc. 26, Mark Stevens Aff., ¶

4

9). Under the Tariff, A&R charged its customers $195.00 for each conversion wash. (*Id.*, ¶ 10). CPG paid the invoice. (*Id.*, Exh. 1, Stanhope Aff., ¶ 11).

On January 31, 2015, CPG began to experience complications with its manufacturing processes. (Doc. 25-1, Exh. 7, April 15, 2016 Stanhope Report). CPG performed testing which disclosed that the HDPE pellets used in those processes were contaminated with a mix of white and gray nylon pellets. (*Id.*; Exh. 1, Stanhope Aff., ¶ 12). According to CPG, the mixing of the nylon pellets with the HDPE pellets during the manufacturing cycle was the source of the malfunctions. (*Id.*, Exh. 7). CPG alleges that the HDPE pellets became contaminated by the nylon pellets on January 28, 2015, when A&R moved the HDPE pellets in a trailer that had last carried white and gray nylon pellets.[3] (*Id.*; Exh. 1, Stanhope Aff., ¶ 12). CPG seeks to recover damages from A&R for its losses resulting from the contamination of the HDPE pellets and the malfunctions in its manufacturing processes.

**III. Summary Judgment Standard**

Fed. R. Civ. P. 56 allows summary judgment to secure a just and efficient determination of an action. This Court may only grant summary judgment as a matter of law when the moving party has identified, as its basis for the motion, an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper where no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the Court must draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). The central issue is "whether the evidence presents a

---

[3] Defendant alleges that plaintiff "makes a logical leap to allege that a minute amount of nylon pellets entered the silo [into which the HDPE pellets were transferred] through the load A&R delivered on January 28, 2015." (Doc. 26 at 7). However, defendant does not deny that plaintiff discovered nylon pellets mixed with the HDPE pellets or that the pellets were from the prior day's load.

5

sufficient disagreement to require submission to a [fact-finder] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986).

The Court is not to weigh the evidence and determine the truth of the matter but is to decide whether there is a genuine issue for trial. *Id.* at 249. There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a fact-finder to return a verdict for that party. *Id.* at 249 (citing *Cities Serv.*, 391 U.S. at 288-289). If the evidence is merely colorable, *Dombrowski v. Eastland,* 387 U.S. 82, 84 (1967), or is not significantly probative, *Cities Serv.*, 391 U.S. at 290, judgment may be granted. *Anderson*, 477 U.S. at 249.

### 1. Applicable law

When jurisdiction is based on diversity of citizenship, the court applies state substantive law to interpret contract provisions. *Whitt Mach., Inc. v. Essex Ins. Co.*, 377 F. App'x 492, 495-96 (6th Cir. 2010) (citing *Hickson Corp. v. Norfolk S. Ry. Co.*, 260 F.3d 559, 566 (6th Cir. 2001)). Ohio law therefore applies here. To prove a breach of contract under Ohio law, a plaintiff must establish the existence of a contract, performance by the plaintiff, breach by the defendant, and damage to the plaintiff. *Avis Rent a Car System, LLC v. City of Dayton, Ohio*, 3:12-cv-399, 3:12-cv-405, 2013 WL 3863911, at *9 (S.D. Ohio July 24, 2013), *aff'd sub nom. Avis Rent-A-Car System, Inc. v. City of Dayton, Ohio*, 581 F. App'x 479 (6th Cir. 2014) (citing *Doner v. Snapp,* 649 N.E.2d 42, 44 (Ohio App. 2nd Dist. 1994)). A party breaches a contract if it "fails to perform according to the terms of the contract or acts in a manner that is contrary to its provisions." *Savedoff v. Access Group, Inc.,* 524 F.3d 754, 762 (6th Cir. 2008) (citing *Jarupan v. Hanna*, 878 N.E.2d 66, 73 (Ohio App. 10th Dist. 2007)).

6

A contract "includes every description of agreement or obligation, whether verbal or written, whereby one party becomes bound to another to pay a sum of money or to perform or omit to do a certain act." *Terex Corp. v. Grim Welding Co.,* 568 N.E.2d 739, 740, syll. ¶ 1 (Ohio App. 9th. Dist. 1989). The elements of a valid contract include an offer, acceptance, mutual assent, and consideration. *Kostenik v. Helper,* 770 N.E.2d 58, 61 (Ohio 2002). The parties must have a meeting of the minds on the essential contract terms. *Id.* at 61 (citing *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relats.,* 61 Ohio St.3d. 366, 369, 575 N.E.2d 134 (Ohio 1991)).

Ohio courts recognize both express contracts and implied-in-fact contracts. *Legros v. Tarr*, 540 N.E.2d 257, 263 (Ohio 1989) (citations omitted). A contract of either type has the same legal effect, the only difference lying in the way the parties have manifested the required assent, or meeting of the minds. *Cleveland Builders Supply Co. v. Farmers Ins. Group of Cos.*, 657 N.E.2d 851, 854 n.1 (Ohio App. 8th Dist. 1995) (citing *Gargasz v. Nordson Corp.*, 68 Ohio App.3d 149, 587 N.E.2d 475 (1991)). The parties assent to the terms of an express contract formally through an offer and acceptance. *Reali, Giampetro & Scott v. Soc. Natl. Bank*, 729 N.E.2d 1259, 1263 (Ohio App. 7th Dist. 1999) (citing *Legros*, 540 N.E.2d at 262-63). An implied contract involves no formal offer and acceptance and no express agreement. *Id.* at 1263. Instead, a party must prove through the circumstances surrounding the parties' transaction that it is "reasonably certain that the contract exists 'as a matter of tacit understanding.'" *Id*. (citations omitted). *See also Aero Fulfillment Services Corp. v. Oracle Corp.*, No. 1:15-cv-287, 2016 WL 2853581, at *5 (S.D. Ohio May 16, 2016) (citing *KeyBank Nat'l Ass'n v. Mazer Corp.,* 935 N.E.2d 428, 435 (Ohio App. 2nd Dist. 2010)).

Ohio courts construe written contracts as a matter of law. *Saunders v. Mortensen*, 801 N.E.2d 452, 454 (Ohio 2004). The court's role in interpreting a contract "is to ascertain and give effect to the intent of the parties." *Id.* The court examines the contract as a whole and presumes the parties' intent is reflected in the contract language. *Sunoco, Inc. (R & M) v. Toledo Edison Co.*, 953 N.E.2d 285, 292 (Ohio 2011). The court must give the contract terms their plain meaning when construing the contract's meaning. *Savedoff*, 524 F.3d at 763 (citing *City of St. Marys v. Auglaize Cty. Bd. of Commrs.*, 875 N.E.2d 561, 566 (2007)). If a written contract's language is clear, the court may not look beyond the writing itself to discern the parties' intent. *Id.* (citing *City of St. Marys*, 875 N.E.2d at 566; *Alexander v. Buckeye Pipe Line Co.*, 374 N.E.2d 146, 150 (Ohio 1978)). The court may consider extrinsic evidence to ascertain the parties' intent only if the contract is ambiguous. *Shifrin v. Forest City Enters.*, 597 N.E.2d 499, 501 (Ohio 1992); *see also California Fitness I, Inc. v. Lifestyle Fam. Fitness, Inc.*, 433 F. App'x 329, 341 (6th Cir. 2011) (citing *Allason v. Gailey*, 939 N.E.2d 206, 212 (Ohio App. 7th Dist. 2010)). A contract is ambiguous "when a provision at issue is susceptible of more than one reasonable interpretation." *Lager v. Miller-Gonzales*, 896 N.E.2d 666, 669 (Ohio 2008). In determining whether contractual language is ambiguous, the contract "must be construed as a whole" so as "to give reasonable effect to every provision in the agreement." *Savedoff*, 524 F.3d at 763-64 (citing Ohio cases).

## IV. Plaintiff's motion for partial summary judgment

### 1. Breach of contract claim

Plaintiff alleges it is entitled to summary judgment on its breach of contract claim because there is no dispute that: (1) the parties had an agreement under which "A&R agreed to transport CPG's HDPE pellets from rail car to silo in a clean trailer free from pellets or residue in

8

exchange for a fee"; (2) CPG performed under the contract by paying A&R the amount listed on the Freight Invoice; (3) A&R failed to perform under the contract by using a trailer contaminated with a mix of white and gray nylon pellets to move Load #1888375; and (4) CPG suffered damages when the nylon pellets mixed with the HDPE pellets during its manufacturing processes and caused malfunctions. (Doc. 25 at 5-6; Doc. 25-1, Exhs. 1-8).

Plaintiff's claim for breach of contract is premised on the parties' agreement governing the transportation of plaintiff's HDPE pellets and, more specifically, the terms for the condition of the trailer used for that purpose. The parties agree that they did not enter into a formal agreement that governed the transportation of the HDPE pellets and, specifically, the cleanliness and other standards that defendant was bound to satisfy when transporting the pellets. The parties did, however, execute several documents that evidence an agreement that A&R would transport the HDPE pellets in exchange for payment from CPG and that A&R would comply with certain standards when transporting the HDPE pellets. The parties therefore had an implied-in-fact contract. *See Aero Fulfillment Services Corp.*, 2016 WL 2853581, at \*5.

Plaintiff CPG alleges that the terms of the parties' implied-in-fact contract are clear from the parties' writings and are not in dispute. Plaintiff contends the parties' contract is evidenced by the following written documents: (1) the A&R Loading Report, (2) the Freight Invoice, and (3) the January 28, 2015 Certificate of Cleanliness. (Doc. 25 at 5; Exhs. 3, 5, 6). Plaintiff alleges there is no dispute that under the terms of the parties' contract, A&R agreed to transport the pellets on January 28, 2015 "from rail car to silo in a clean trailer free from pellets or residue in exchange for a fee." (*Id*. at 5).

Defendant A&R admits that the parties entered into an agreement that required "A&R to clean the trailer, provide CPG a certificate of cleanliness, and transport the HDPE pellets."

(Doc. 26 at 4). A&R asserts that the implied-in-fact contract included the terms of the Certificate of Cleanliness and the A&R Tariff, which provided that A&R's tanks were returned to service after cleaning in a "clean, dry and odor free state." (*Id*. at 5, citing A&R Tariff, p. 8). However, A&R does not construe the parties' agreement, read as a whole, as broadly as plaintiff interprets it. A&R alleges that the applicable writings show the parties agreed to the following terms: (1) A&R had complied with a provision of the parties' contract that required it to perform a "conversion wash" of the Trailer used to transport the HDPE pellets before loading the pellets; and (2) after the conversion wash, the Trailer's load and unload lines were "clean and dry" (but not "pellet free"); the "tank interior, hoses, and transfer fittings used to load were clean, dry and odor free with no pellets, fines or residue found in those portions of the trailer"; the "end cap gaskets were in place and in good condition"; and the "bottom line clamps were in good condition, tight and secure." (*Id*. at 4). In support of its interpretation of the parties' implied contract, A&R has submitted the affidavit of Mark Stevens, Vice-President of Quality Assurance for A&R. (Doc. 26-1, Stevens Aff.). Mr. Stevens asserts that a "conversion wash" as described in the Certificate of Cleanliness is the "best practice for washing in the transportation industry"; the Certificate documents that a conversion wash was performed but "was not a warranty or guarantee that the trailer [used to transport plaintiff's HDPE pellets] was 100% free of pellets"; and there were "many components of the trailer" where "pellets could have lodged and gone undetected" even though a conversion wash had been performed. (*Id*., ¶¶ 3, 4, 6).

In reply, plaintiff argues that the meaning of the parties' implied-in-fact contract is unambiguous. (Doc. 27). Plaintiff alleges that A&R "promised to utilize a trailer with 'no pellets' and represented that it had done so." (*Id*. at 3). Plaintiff contends that under Ohio law,

defendant cannot introduce extrinsic evidence to contradict the unambiguous terms of the contract.

The parties agree that they had an implied-in-fact contract that governed their transportation agreement. The contract is evidenced by A&R's Loading Report (Doc. 25-1, Exh. 3); A&R's Certificate of Cleanliness dated January 28, 2015 (*Id.*, Exh. 6); and A&R's Freight Invoice dated January 29, 2015 (*Id.*, Exh. 5). Although defendant alleges the A&R Tariff formed part of the parties' agreement, defendant has not produced the Tariff and it is not part of the record. Thus, except for Mr. Stevens' affidavit statements as to the Tariff terms governing the fee for a conversion wash (*see* Doc. 26, Exh. 1, ¶¶ 9, 10)), the Court cannot accept defendant's representations regarding the terms of the Tariff on summary judgment and construe the parties' agreement to include the alleged terms.

The material terms of the parties' implied contract are disputed and are not clear from the writings the parties executed. A&R made no certifications or representations about the condition of the Trailer in the Loading Report. (*Id.*, Exh. 3). The Freight Invoice includes a "Wash Charge" in the amount of $195.00 for defendant's cleaning of the trailer, but the document makes no guarantees in connection with the charge and no representations as to the condition of the Trailer. (*Id.*, Exh. 5). By the terms of its Certificate of Cleanliness, A&R promised to transport the HDPE pellets in a trailer that was "clean," "dry," and "odor free." (*Id.*, Exh. 6). A&R did not also make an unambiguous promise that the *entire* Trailer would be free of pellets from prior loads. A&R agreed only that specified parts of the trailer - "the tank interior, hoses, and transfer fittings used to load" - would have "no pellets." (*Id.*). A&R represented that the Trailer's "[l]oad and unload lines were . . . clean and dry" when it loaded the HDPE pellets onto

11

the Trailer, but A&R did not go further and state that these lines or any additional components of the Trailer contained "no pellets." (*Id.*).

The undisputed evidence therefore shows only that defendant A&R promised to transport the HDPE pellets in a trailer that was "clean," "dry" and "odor free," and in which the "tank interior, hoses, and transfer fitting used to load . . . [had] no pellets. . . ." (*Id.*). Whether A&R promised by making these representations that it would transport the HDPE pellets in a trailer that contained "no pellets" in any of its components is subject to interpretation. To accept plaintiff's construction of the parties' contract as guaranteeing a trailer completely free of all pellets from prior loads, the Court would have to construe the contract terms "clean" and "pellet-free" as synonymous. It is not possible to accept or reject that construction on summary judgment because these terms as used in the contract are susceptible of different reasonable interpretations. It is reasonable to conclude that the parties did not intend to equate the term "clean" with the phrase "pellet-free," which is the interpretation defendant advocates. The language of the Certificate of Cleanliness supports this interpretation of the contract. (*Id.*). Defendant represents in the Certificate that it will use a "clean, dry and odor-free trailer," but defendant guarantees that only certain components of the trailer will contain "no pellets." (*Id.* - "This inspection confirms – *the tank interior, hoses, and transfer fittings used to load* are Clean, Dry and Odor Free; with no pellets, fines, or residue. . . .") (emphasis added). If defendant intended to guarantee that there would be "no pellets" anywhere in the trailer, it is not clear why defendant singled out select trailer components in the Certificate as guaranteed to have "no pellets." On the other hand, it is possible that the parties intended a "clean" trailer as used in their agreement to mean one that did not contain a single pellet in any of its compartments. It

simply is not clear from the plain language of the writings the parties executed which interpretation they intended.

Because the material terms of the parties' contract are susceptible of more than one reasonable interpretation, the contract is ambiguous. The Court can therefore consider extrinsic evidence to discern the parties' intended meaning. To support its interpretation of the contract, A&R relies on the affidavit of Mr. Stevens, the Vice-President of Quality Assurance for A&R. (Doc. 26, Exh. 1, Stevens Aff., ¶ 1). Mr. Stevens states in his affidavit that he holds a degree in Transportation and Logistics, he has worked in the transportation field for over 35 years, and he is "very familiar with the standards and practices within the industry." (*Id.*). Mr. Stevens asserts that the conversion wash A&R performed "was not a warranty or guarantee that the trailer was 100% free of pellets," and there were "many components of the trailer" where "pellets could have lodged and gone undetected" even though a conversion wash had been performed. (*Id.*, ¶¶ 3, 4, 6). In response, plaintiff adheres to its position that the phrase "no pellets" is unambiguous and use of the phrase in the parties' writings demonstrates defendant promised to use "a trailer with 'no pellets.'" (Doc. 27 at 3). The dispute here, though, does not center on the meaning of the phrase "no pellets" in isolation. The parties' dispute instead turns on defendant's use of the phrase in the larger context of the parties' agreement. The evidence defendant has produced supports its interpretation of the parties' agreement as limiting the "no pellets" representation to specified portions of the Trailer. However, evidence submitted by plaintiff supports its position that the contract required A&R to transport the HDPE pellets in a "clean" trailer that had "no pellets" in any of its parts. This evidence includes the affidavit statements of Bruce Stanhope, Ph.D., CPG's Vice-President of Research and Development, documenting the sensitive nature of CPG's manufacturing processes and the importance of maintaining exacting standards of purity

13

in its manufacturing materials.  (*See* Doc. 25-1, Exh. 1, Stanhope Aff., ¶¶ 5, 6)).  The record before the Court does not demonstrate which interpretation of the parties' implied contract is correct.

The undisputed evidence shows that defendant A&R promised to transport the HDPE pellets in a trailer that was "clean," "dry," and "odor free" and in which the "tank interior, hoses, and transfer fitting used to load . . . [had] no pellets. . . ."  (Doc. 25-1, Exh. 3).  Considered as a whole, the parties' agreement is ambiguous with regard to whether defendant promised it would use a trailer that had "no pellets" throughout or whether it guaranteed only that certain parts of the trailer would contain "no pellets."  Further development of the record and fact-finding is required to resolve the ambiguity and discern the parties' intended meaning.  The issue of whether defendant breached the contract cannot be addressed until the terms of the contract are established.  Plaintiff CPG therefore is not entitled to summary judgment on the liability portion of its breach of contract claim.

### 2. Negligent misrepresentation claim

Plaintiff brings a claim against defendant for negligent misrepresentation.  (Doc. 2).  Plaintiff alleges that despite representing and warranting that the trailer used to transport Load #1888375 contained "no pellets," a mix of white and gray nylon pellets from the day's previous load was in the Trailer when A&R loaded the HDPE pellets.  (*See* Doc. 25 at 7-8, citing Doc. 25-1, Exh. 6).  Plaintiff alleges it is entitled to summary judgment on its negligent misrepresentation claim because A&R falsely represented that its trailer did not contain any pellets when it actually contained a mix of white and gray nylon pellets; CPG justifiably relied upon A&R's false representation; A&R failed to exercise reasonable care by representing to CPG in the January 28, 2015 Certificate of Cleanliness that the "trailer contained 'no pellets'"; and A&R's

14

misrepresentation caused CPG to suffer pecuniary loss.  (*Id*. at 7-8).  Defendant A&R contends

plaintiff has not established the elements of its claim because it did not provide false information

about its trailer; CPG did not justifiably rely on the Certificate of Cleanliness to insure the HDPE

pellet load would not be contaminated; and there is no evidence A&R failed to exercise

reasonable care in cleaning and inspecting the Trailer or in providing the Certificate of

Cleanliness to CPG.  (Doc. 26 at 5-7).

 Under Ohio law, "the existence of a contract generally excludes the opportunity to

present the same case as a tort claim." *Aero Fulfillment Services Corp.* 2016 WL 2853581, at *5

(quoting *Wolfe v. Cont'l Cas. Co.*, 647 F.2d 705, 710 (6th Cir. 1981) ("We recognize[] that a tort

exists only if a party breaches a duty which he owes to another independently of the contract,

that is, a duty which would exist even if no contract existed.")).  The law prohibits a plaintiff

from asserting a tort claim based on the same actions that give rise to a breach of contract claim,

unless the defendant also breaches "a duty owed separately from that created by the contract."

*Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 684 N.E.2d 1261, 1270 (Ohio App. 9th Dist.

1996).

 Here, plaintiff's negligent misrepresentation and breach of contract claims are based on

the same actions.  Plaintiff claims that defendant breached an implied contract which obligated

A&R to transport the HDPE pellets in a "clean" and "pellet-free" trailer.  (Doc. 2 at 6).  The

basis of plaintiff's negligent misrepresentation claim is that defendant falsely represented that the

trailer it used to transport the HDPE pellets contained "no pellets."  (*Id*. at 7).  Because the

breach of contract and negligent misrepresentation claims are based on the same actions, plaintiff

is limited to pursuing only its breach of contract claim and cannot proceed with its tort claim.

Plaintiff is not entitled to summary judgment on its negligent misrepresentation claim.

15

**IT IS THEREFORE ORDERED THAT:**

Plaintiff's motion for partial summary judgment (Doc. 24) is **DENIED**.

Date: _12/15/16_

Karen L. Litkovitz
United States Magistrate Judge

16